[S. F. No. 21695. In Bank. Aug. 11, 1964.]

HONNEGINA MULDER, Plaintiff and Respondent, v. ANDRE CASHO, Defendant and Appellant.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Defendant and Appellant.

Herron & Winn and Manoucher Farzan for Plaintiff and Respondent.

GIBSON, C. J.—Defendant, a used car dealer, appeals from an adverse judgment in an action to recover damages for personal injuries received by plaintiff while driving a 1948 automobile she had purchased from defendant.

Plaintiff and defendant executed an instrument prepared by him on a printed form entitled "Auto Sales Order." The instrument, which stated that the purchase price of the car was $125, contained a provision, commonly called a "merger" clause, reading, "Entire agreement is expressed herein in writing. No other terms or conditions, oral or written, will be recognized." The instrument also stated, "All used cars . . . sold 'As Is' and without guarantee as to condition, mileage, year or model, unless otherwise specified in writing."

Several days later, as plaintiff was driving down a steep hill, the car lost all braking power, gained momentum, and attained a rapid rate of speed. Plaintiff was injured when her car collided with two other vehicles several blocks away.

Plaintiff's testimony may be summarized as follows: When defendant showed her the car prior to the execution of the sales order, he said that the car would be put into "good shape" and that he would put better tires on it. At plaintiff's request defendant went with her to a gas station to have the car checked by a mechanic, who, after driving it, said that it was "pretty loose" and that the brakes needed adjusting. Defendant said he would make the necessary adjustments, and, after he and plaintiff returned to the used car lot and executed the instrument, he said the car would be ready in two days. When plaintiff went back for the car, she asked if it was necessary to take the car to a garage for a "check-up," and defendant replied that she did not "have to worry about the car for the next two months." She noticed the tires had not been changed, and he told her he would change them if she would bring the car back in a few days. She did so, and he replaced the tires.

An expert called by plaintiff testified as follows: The foot brakes were defective and failed to work. The defects included an internal leak of brake fluid in the master cylinder, and where such leaks are present the brake pedal will go down to the floor board if pressure is kept on the pedal. There were also leaks in both of the front wheel cylinders, the front brake linings were "badly worn," and the brake drums were scored. When the foot brakes failed, plaintiff applied the hand brakes, and this generated torque pressure causing two

welds to break and the rear axle housing to rotate. The rotation severed the hand brake cable. The hand brakes applied their braking power entirely on the rear wheels, whereas the foot brakes, had they functioned, would have distributed their braking power over all four wheels, exerting 65 per cent of the pressure on the front wheels.

Defendant's testimony may be summarized as follows: He told plaintiff before and during the signing of the instrument that he would replace the tires but did not make any of the other statements attributed to him by plaintiff, and the mechanic did not say anything to him concerning the brakes.[1] He bought the car about two and a half months before he sold it to plaintiff, and at that time he depressed the pedal operating the foot brakes and applied pressure for about a minute in order to determine if there was leakage of brake fluid in the master cylinder. He also drove the car around the block at a speed of 25 miles an hour, depressing the brake pedal "hard" once and "gently" five times. On this occasion and during several subsequent demonstrations of the car to prospective customers, the brakes operated properly. He did not inspect the brake fluid level, the master cylinder, the wheel cylinders, or the brake linings, and he did no work on the brakes. He did not raise the car on a rack or look underneath, and, although he found no signs of leakage on examining the side of the wheels where the hubcaps were located, he did not look at the other side of the wheels or tires.

In response to interrogatories submitting special issues of fact, the jury found that defendant orally agreed to put the automobile into a safe mechanical condition equipped with adequate and proper brakes and that defendant breached the agreement. It also found breaches of express and implied warranties which proximately caused plaintiff's injuries. The jury was unable to agree whether there was negligence by defendant which proximately caused the injuries. The general verdict was in favor of plaintiff, assessing damages at $35,000.

Section 24007 of the Vehicle Code provides, "No dealer shall sell a new or used motor vehicle without first testing and, if necessary, adjusting the . . . brakes on the vehicle to conform with this code and department regulations adopted pursuant to this code unless the vehicle is sold for the purpose of being wrecked or dismantled." Motor vehicles must be

---

[1]The mechanic was out of the country at the time of the trial and did not testify.

equipped with brakes adequate to stop and hold the vehicle (§ 26300), and all "brakes and component parts thereof shall be maintained in good condition and in good working order. . . .'' (§ 26453.) A passenger motor vehicle designed to carry not more than nine persons must be capable of stopping within 25 feet from an initial speed of 20 miles per hour. (§ 26454, subd. (a).)

It is obvious from the sections referred to above that a dealer such as defendant who sells a used automobile for ordinary purposes is required to make a reasonable inspection of the brake system and that where he has reason to believe from the inspection or from some other source that the brakes are defective he must place the brakes in "good condition and in good working order" before he delivers the vehicle to the purchaser. These statutory requirements are designed to protect the general public as well as purchasers. They constitute implied-in-law terms of every sales contract to which they are applicable and may not be waived or defeated by agreement of the parties. (Cf. *Metropolitan Water Dist.* v. *Marquardt* (1963) 59 Cal.2d 159, 180 [28 Cal.Rptr. 724, 379 P.2d 28]; *Exchange Cas. & Surety Co.* v. *Scott* (1961) 56 Cal.2d 613, 622-624 [15 Cal.Rptr. 897, 364 P.2d 833]; *Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union* (1955) 45 Cal.2d 764, 771 [291 P.2d 433].) It follows that regardless of the ordinary meaning and effect of a "merger" or an "as is" clause, defendant had a contractual obligation to put the brakes in good condition and working order by making any repairs which he knew were necessary or which a reasonable inspection would have shown to be necessary. Plaintiff may properly recover for a breach of this obligation whether or not the parol evidence rule or other principles of law preclude recovery on the basis of an oral promise to repair or on the usual implied sales warranties of fitness for a known purpose and of merchantability.

The jury, as we have seen, made a special finding that defendant breached an oral agreement to put the brakes into adequate and proper condition, and this amounts to a finding, supported by ample evidence, that the statutory requirements were not complied with. Thus the finding of the jury, although made for purposes of another legal theory, shows a violation of defendant's statutory duty which was part of the contract, and the judgment must be affirmed unless, as urged

by defendant, the failure of the foot brakes cannot be said to have been a proximate cause of the accident.

■ Defendant argues that the proximate cause of the accident was not the defective condition of the foot brakes but was the failure of the two welds holding the rear axle housing in place. However, the evidence shows that the failure of the welds was caused by the application of the hand brakes and that plaintiff would not have been forced to use the handbrakes had the foot brakes functioned. It appears that the hand brakes exerted more pressure on the welds than would have resulted from foot brakes in proper condition. Under the circumstances it could reasonably be inferred that the accident would not have happened but for the defective condition of the foot brakes.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Appellant's petition for a rehearing was denied September 10, 1964.