241 S.E.2d 924 (1978)
Joe CASSELLA et al.
v.
WEIRTON CONSTRUCTION COMPANY et al.[*]
No. 13777.
Supreme Court of Appeals of West Virginia.
March 7, 1978.
Dissenting Opinion May 1, 1978.
*925 Phillips, Holden, Marshall & Gardill, George S. Hazlett, Wheeling, for appellants.
Donell, DeLaMater & Hagg, W. Dean DeLaMater, Weirton, for appellees.
MILLER, Justice:
This is an appeal from a final order granting summary judgment in favor of the defendants. As is often the case where summary judgment is granted, the record before us is meager and confused.
Suit was filed by plaintiffs Joe and Tony Cassella on March 3, 1973, as a civil action to recover damages for the wrongful conversion of approximately 630 tons of metallic slag.
The defendants moved to dismiss the action, claiming that the plaintiffs' suit was barred by virtue of a mutual release which the parties had executed on February 9, 1972, and which had resulted in the dismissal of a prior civil action brought by the same plaintiffs against the defendants.
It appears that the prior civil action had been instituted by the plaintiffs to recover damages for the alleged conversion by the defendants of a much larger quantity of metallic slag. The total tonnage of the various types of slag involved in the first action was approximately 96,000.
Pleadings filed in the first action indicate the defendants contested the plaintiffs' claim of title to the slag and also asserted a counterclaim for recovery of delinquent land rent, for monies owed on an open account and on a truck rental agreement.
The February 9, 1972, mutual release, after naming the parties and identifying the first law suit, stated:
". . . that all matters in controversy. . . have this date, been and are hereby settled with prejudice to all parties and that no future actions may be predicated or commenced surrounding and concerning the matters contained in said suit."
On the same date that the mutual release was signed, the defendant, Weirton Ice & Coal Supply Company, sent a letter to plaintiff, Joe Cassella, which stated:
"RE: Slag (Ohio-Ferro Alloys Product)

"Dear Joe:
"Confirming our Agreement of this date, you are hereby permitted and authorized to remove the slag which you estimate to be approximately 1,000 tons *926 and also to remove the alloys from said slag which is located on the right-hand side of our haul road leading toward New Alexandria, Ohio adjacent to which your bulldozer is located on our slag.
"We understand you shall remove the dozer and not disrupt the present road or remove any of the slag under the same."
Apparently, after the mutual release was executed but before the dismissal order was entered in the first suit, the plaintiffs moved that the mutual release be set aside. The record does not reflect the date on which motion was made or the grounds advanced. It does reflect that a hearing was held on this matter on January 28, 1974, and that a ruling on the defendants' motion to dismiss the second suit was postponed pending the hearing on the motion to set aside the mutual release in the first suit.
The hearing before the court ultimately resulted in confirmation of the mutual release and dismissal of the first action. A copy of the transcript of the hearing to set aside the mutual release was filed as a part of the record in this appeal. It is not particularly helpful to the summary judgment issues in this case, since the matters involved at that hearing did not touch upon the ownership of the slag, but related to the consideration exchanged for the mutual release and plaintiffs' ability to tender back the consideration. At one point counsel for plaintiffs Cassella attempted to explore the issue of the slag ownership with Joe Cassella, and the court, in refusing this line of inquiry, stated, "You are going into the issue as to who owned the slag and that is not material at this point."
The present record is barren as to the legal contentions urged by the parties in the second law suit at the time of the hearing on the motion for summary judgment. The court's memorandum granting summary judgment is as follows:
"The Court is of the opinion that, in light of the contents of the Mutual Release executed by both parties hereto on February 9, 1972, the validity of which was upheld by this Court after an evidentiery [sic] hearing was held as part of the proceedings in Civil Action Number 5418, the Motion of the Defendants to Dismiss should be granted.
"Counsel for the Defendants may accordingly prepare an Order."
Plaintiffs did file an affidavit in support of their position that they owned the slag. The troublesome point is: What is the effect of the February 9, 1972, letter? Plaintiffs urge on appeal that the letter was a part of the mutual release wherein the defendants agreed to permit the plaintiffs to remove a thousand tons of slag. But plaintiffs claim that when they sought to do so, they discovered that the defendants had already removed 630 tons of that slag.
It is true that plaintiffs' complaint does not describe with particularity their claim of ownership to the 630 tons of slag; nor does it refer to the letter of February 9, 1972. However, under our system of notice pleading, this is not a fatal defect. Clements v. Stephens, W.Va., 211 S.E.2d 110 (1975); Rosier v. Garron, Inc., 156 W.Va. 861, 199 S.E.2d 50 (1973).
There is some indication from the record of the hearing to set aside the mutual release that defendants acknowledged plaintiffs' right to remove the 1,000 tons, when their counsel asked:
"Q Isn't it a fact, Mr. Cassella, that then in February 1972 as part of this settlement agreement, this Mutual Release, you were given permission to remove the slag which you yourself estimated to be approximately a thousand tons?"
Cassella's response was that he removed some of the amount, but before he could remove all of it the defendants had removed some:
"A I don't know how many tons I removed because between the settlement agreement and between the time I went to remove the slag Starvaggi took some more."
The record discloses a genuine issue of material fact regarding whether the plaintiffs were entitled to remove 1,000 tons of slag under the mutual release and whether the plaintiffs removed the same.
While the point appears not to have received extensive discussion by this Court, it is generally acknowledged that a release is "construed from the standpoint of the parties at the time of its execution, and in the light of their relation . . . and of the circumstances which surrounded the transaction; and extrinsic evidence is admissible to show the surrounding circumstances." 76 C.J.S. Release § 38; see also 66 Am.Jur.2d Releases § 52.
In Clark v. Sperry, 125 W.Va. 718, 25 S.E.2d 870 (1943), the Court examined the conditions surrounding a release and *927 concluded the consideration was not adequate to make the release valid. It recognized that "a release may be made subject to the happening of a condition precedent." 125 W.Va. at 720, 25 S.E.2d at 872.
This Court, in Conley v. Hill, 115 W.Va. 175, 174 S.E. 883 (1934), stated in Syllabus Point 2:[1]
"A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution."
As illustrative of the right to inquire into the circumstances surrounding a release, this Court, in Thornton v. Charleston Area Medical Center, W.Va., 213 S.E.2d 102, 108-109 (1975), adopted the rule that a general release of the original tort-feasor will not automatically release successive tortfeasors. The intent of the parties is decisive, and parol evidence may be introduced to show intent.
Here we have a letter dated the same day as the mutual release agreement, which apparently refers to the release, whereby the defendants extend to the plaintiffs the right to obtain approximately 1,000 tons of slag. The plaintiffs were entitled to introduce evidence to show the circumstances surrounding the letter and its relation to the mutual release agreement.
The trial court foreclosed inquiry on this issue by summary judgment. There was a genuine issue of material fact which precluded summary judgment, which was plaintiffs' rights under the letter and the mutual release agreement. Summary judgment was not warranted in these circumstances. Aetna Casualty and Surety Co. v. Federal Ins. Co., 148 W.Va. 160, 133 S.E.2d 770 (1963).
For the foregoing reasons, the order granting summary judgment is reversed and the case is remanded for trial.
Reversed and remanded.
CAPLAN, Chief Justice, dissenting:
Believing firmly that there was no genuine issue of material fact and that summary judgment was proper on the record before us, I respectfully dissent.
The mutual release provided that all matters in controversy in the earlier action were settled, with prejudice, and that "no further actions may be predicated or commenced surrounding and concerning the matters contained in said suit." That ownership of the slag was a subject of the first suit cannot be denied. The mutual release is clear and unequivocal and needs no construction. The intention clearly expressed therein was to settle all matters relative to the ownership of said slag.
The majority concludes from the letter of February 9, 1972, wherein Cassella was given the right to remove 1000 tons of slag, that an issue was raised as to whether the defendants wrongfully removed a portion of that 1000 tons. In fact, the majority assumes that the 630 tons for which suit was instituted, was a part of the said 1000 tons of slag. The record does not support that assumption. Cassella did not know how many tons he had removed. In his complaint he made no claim that the 630 tons, for which he was suing, was a part of the 1000 tons referred to in the letter. There was no allegation that he did not get or that he was deprived of the 1000 tons to which he was entitled by the letter of February 9, 1972.
There is nothing in the record which even tends to show that the 630 tons of slag sought by Cassella was not a part of that slag involved in the first case. The ownership to that slag was settled by the execution of the mutual release. Without, at least, an allegation by Cassella that the 630 tons was a part of the 1000 tons to which he was entitled, no material issue exists as to the ownership of the 630 tons and the court, so finding, did not err. I would affirm the judgment of the Circuit Court of Hancock County.
I am authorized to say that Justice NEELY joins in this dissent.
NOTES
[*] Editor's Note: The decision in McCartney v. Coberly, published in advance sheets at this citation (241 S.E.2d 924) was withdrawn from the bound volume because rehearing is pending.
[1] While Conley held that the dismissal with prejudice of the original tort-feasor acted as a bar on a subsequent claim for malpractice arising out of the original injuries, this holding was overruled in Thornton v. Charleston Area Medical Center, W.Va., 213 S.E.2d 102, 108 (1975).