LEASETRONICS, INC.

*a corporation*

*v.*

CHARLESTON AREA MEDICAL CENTER, INC.,

*a corporation*

(No. 14182)

Decided November 5, 1980.

774

*Bowles, McDavid, Graff & Love, Paul N. Bowles and Gerard R. Stowers,* for appellant.

*Steptoe & Johnson and Wilson Anderson* for appellee.

MILLER, JUSTICE

Leasetronics, Inc., appeals from an order dismissing its suit for unlawful possession and rent owed on certain television sets on the premises of the McMillan Division of the Charleston Area Medical Center (herein CAMC). The basis for the trial court's dismissal was that it construed the July 1, 1974, written agreement between the parties to transfer title of the sets to CAMC and release CAMC from any further liability to Leasetronics. Leasetronics contends that it was error for the Circuit Court of Kanawha County to refuse to consider extrinsic evidence in determining the intent of the parties since the written agreement was ambiguous.

The background facts are not disputed by the parties. In 1968, Leasetronics entered into three television lease

agreements with three different Kanawha Valley hospitals, the first with Charleston General in February, the second with McMillan in May and the third lease with Memorial in June. These leases were similar and provided the hospitals with television sets and the equipment necessary to their operation. The hospitals were required to return the sets at the termination of the sixty-month leases.[1]

On January 1, 1972, two of the hospitals, Memorial and Charleston General, merged into CAMC, and it assumed all rights and liabilities of the two.[2] The lease for television sets at the McMillan Hospital expired in December of 1973. CAMC continued to pay holdover rent on the television sets until June 1, 1974. After that date, CAMC refused to pay any rent on the television sets and refused to tender the television sets to Leasetronics. CAMC claimed ownership of the television sets pursuant to an agreement dated July 1, 1974, which it contended gave them ownership of all television sets in all three hospitals.

The July 1, 1974, agreement is composed of four "whereas" clauses and four additional clauses. The operative language in the agreement involves CAMC paying $93,921.00 for television sets held pursuant to the June lease with Memorial Hospital and the February lease with Charleston General Hospital.[3] There is no mention

---

[1] This provision on title and return stated:

"(3) Title and ownership of all television sets, control devices and set attachments shall be and remain in Lessor at all times, even upon termination of this agreement by maturity or otherwise, and upon termination of this agreement for any cause or at any time, Lessee shall return said sets to Lessor in as good condition as when received except for wear, tear and depreciation resulting from normal use."

[2] According to the appellant's brief, McMillan Hospital merged with Charleston General Hospital some time between 1968 and 1972.

[3] The language of this portion of the agreement is:

"NOW, THEREFORE, THIS AGREEMENT BY AND BETWEEN LEASETRONICS, INC. AND CHARLESTON AREA MEDICAL CENTER, INC. WITNESSETH:

of the May lease with McMillan Hospital in the entire agreement.

However, in the fourth "whereas" clause of the agreement, there is a reference to the McMillan Division and the transfer of television sets by Leasetronics to CAMC.[4] This clause referred to the television lease agreements dated February 1 and June 4, 1968, which involved Charleston General and Memorial Hospitals. In the third "whereas" clause of the agreement, which referred to the merger of the two hospitals into CAMC on January 1, 1972, there is recited only CAMC's assumption of the obligations and liabilities of Memorial and Charleston General without any mention of McMillan.[5]

The positions of the parties before the trial court was rather simple. Leastronics claimed the July 1, 1974,

---

"That for and in consideration of Ninety Three Thousand Nine Hundred Twenty One Dollars ($93,921.00) this day in hand paid by Charleston Area Medical Center, Inc. to Leasetronics, Inc., the receipt and sufficiency of which is hereby acknowledged, Leasetronics, Inc. does hereby release and discharge Charleston Area Medical Center, Inc. from any and all obligations imposed upon Charleston, Area Medical Center, Inc. by virtue of those certain contracts entered into by Leasetronics, Inc. with Memorial Hospital Association of Charleston, dated June 4, 1968, and by Leasetronics, Inc. with Charleston General Hospital, dated February 1, 1968, and doth declare said contracts cancelled and terminated and doth release and discharge Charleston Area Medical Center, Inc. from any and all liability, obligations and claims for money arising out of or resulting from said contracts."

[4] "WHEREAS, it is now the desire of Leasetronics, Inc. and Charleston Area Medical Center, Inc. to cancel the aforesaid contracts of February 1, 1968 and June 4, 1968, and to transfer ownership of all television sets and supporting equipment now on the premises of General and McMillan Divisions and Memorial Division of Charleston Area Medical Center, Inc. to Charleston Area Medical Center, Inc."

[5] "WHEREAS, Memorial Hospital Association of Charleston and Charleston General Hospital did merge with Charleston Area Medical Center, Inc. on January 1, 1972, with the said Charleston Area Medical Center, Inc. succeeding to all rights, privileges, obligations and liabilities of Memorial Hospital Association of Charleston and Charleston General Hospital; and"

agreement on its face did not cover the television sets at the McMillan Division. An alternative position was that if this agreement was not clear, then because of the ambiguity between the "whereas" clauses and the rest of the agreement, extrinsic evidence should be permitted to show the intent of the parties.[6] CAMC took the position that the agreement gave it ownership of all the television sets and since it was not ambiguous no extrinsic evidence could be introduced to show the intent of the parties.

The trial court in a written memorandum concluded that the agreement was not ambiguous. While it noted the lack of reference to the McMillan lease in the agreement, it was impressed with the broad transfer language in the second paragraph of the agreement.[7]

We disagree with the trial court's almost total reliance on this second paragraph since it was followed by two other paragraphs which appeared to limit the entire tenor of the agreement to the February 1 (Charleston General) and June 4 (Memorial) leases.[8] The agreement

---

[6] In connection with Leasetronics' extrinsic evidence claim, the court's pretrial order reflects that Leasetronics desired to introduce correspondence between the attorneys representing the two parties to explain the basis of the July 1, 1974, agreement.

[7] "For the consideration aforesaid, Leasetronics, Inc. doth hereby set over and transfer to Charleston Area Medical Center, Inc. ownership of and full title and possession to all television sets, accessories, attachments, cables, aerials and equipment not upon the premises of Charleston Area Medical Center, Inc., as well as any television sets presently off of the premises of Charleston Area Medical Center, Inc. for servicing and repair by Leasetronics, Inc."

[8] These final two paragrahps of the July 1, 1974 agreement are:

"Charleston Area Medical Center, Inc., in consideration of the transfer to it of all television sets, accessories, attachments, cables, aerials and equipment now on its premises by Leasetronics, Inc., does release and discharge Leasetronics, Inc. from all obligations imposed upon Leasetronics, Inc. by the aforesaid contracts of February 1, 1968 and June 4, 1968, and doth declare said contracts terminated and cancelled.

"It is the intention of the parties hereto for each to release the other from all sums of money, accounts, suits, proceedings,

could reasonably be construed to cover only the purchase by CAMC of the television sets covered by the February and June, 1968, leases to Charleston General and Memorial Hospitals.

On this appeal, the parties are in some disagreement as to whether the July 1, 1974, agreement should be considered as a release or a contract for sale. We need not decide whether the more liberal rule in regard to the use of extrinsic evidence to show the relation of the parties and the circumstances surrounding a release should be applied.[9] We find the conventional contract rule that extrinsic evidence can be introduced where the contract is ambiguous or subject to more than one interpretation to be applicable. *McShane v. Imperial Towers, Inc.,* ____ W. Va. ____, 267 S.E.2d 196 (1980); *Berkeley County Public Service District v. Vitro Corp. of America,* 152 W. Va. 252, 162 S.E.2d 189 (1968); *International Nickel Co. v. Commonwealth Gas Corp.,* 152 W. Va. 296, 163 S.E.2d 677 (1968); *Kanawha Banking & Trust Co. v. Gilbert,* 131 W. Va. 88, 46 S.E.2d 225 (1947); *Garret v. Patton,* 81 W. Va. 771, 95 S.E. 437 (1918); *Eastern Gas and Fuel Associates v. Midwest-Raleigh, Inc.,* 374 F.2d 451 (4th Cir. 1967), *cert. denied,* 389 U.S. 951, 88 S.Ct. 333, 19 L.Ed.2d 360 (1967). In Syllabus Point 1 of *McShane, supra,* we stated our customary rule:

> " 'While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the

claims and demands whatsoever which either party had or now has against the other for or by reason of the aforesaid contracts of February 1, 1968 and June 4, 1968."

[9] In Syllabus Point 1 of *Cassella v. Weirton Construction Co.,* 161 W. Va. 317, 241 S.E.2d 924 (1978), we said:

"A release is construed from the standpoint of the parties at the time of its execution. Extrinsic evidence is admissible to show both the relation of the parties and the circumstances which surrounded the transaction."

*See also Thornton v. Charleston Area Medical Center,* 158 W. Va 504, 213 S.E.2d 102, 108-109 (1975); *Clark v. Sperry,* 125 W. Va. 718, 25 S.E.2d 870 (1943).

parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently. If the parol evidence be not in conflict, the court must construe the writing; but, if it be conflicting on a material point necessary to interpretation of the writing, then the question of its meaning should be left to the jury under proper hypothetical instructions.' Syllabus Point 4, *Watson v. Buckhannon River Coal Co.*, 95 W. Va. 164, 120 S.E. 390 (1923)."

The trial court dismissed the plaintiff's claim holding as a matter of law that the July 1, 1974, agreement was not ambiguous which was functionally equivalent to the granting of a motion to dismiss for failure to state a cause of action under Rule 12(b)(6) of the Rules of Civil Procedure. We have consistently held that:

" 'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syl. pt. 3, *Chapman v. Kane Transfer Company*, 160 W. Va. 530, 236 S.E.2d 207 (1977)." Syllabus, *Dishman v. Jarrell*, ____ W. Va. ____, 271 S.E.2d 348 (1980); Syllabus, *John W. Lodge Dist. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 245 S.E.2d 157 (1978).

For the foregoing reasons the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings on the merits.

*Reversed and*
*Remanded*