412 S.E.2d 504

**Kathleen MURPHY, Plaintiff Below, Appellant,**

v.

**NORTH AMERICAN RIVER RUNNERS, INC., Defendant Below, Appellee.**

No. 20072.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1991.

Decided Dec. 12, 1991.

---

D. Clinton Gallaher, IV, Fayetteville, for appellant.

Charles E. Hurt, Victor A. Barone, Charleston, for appellee.

Michael B. Victorson, William C. Porth, Jr., Robinson & McElwee, Charleston, for West Virginia Professional River Outfitters, Inc. amicus curiae.

McHUGH, Justice:

The issue in this appeal is whether the trial court, the Circuit Court of Fayette County, West Virginia, properly granted a summary judgment to the defendant on the ground that the anticipatory release executed by the plaintiff was a complete bar to any action by the plaintiff against the defendant for injuries sustained by the plaintiff during a whitewater rafting expedition conducted by the defendant. We believe that the circuit court improperly granted the summary judgment, for the reasons stated below, and, consequently, we reverse and remand.

## I

In August, 1987, the plaintiff-appellant, Kathleen L. Murphy, went whitewater rafting as a paying passenger in a raft owned and operated by the defendant-appellee, North American River Runners, Inc., a licensed commercial whitewater outfitter.[1] During this whitewater rafting trip on the New River in Fayette County, West Virginia, the defendant's commercial whitewater guide [2] operating the raft in which the plaintiff was riding engaged in a rescue operation of another raft owned and oper-

---

1. *W.Va.Code*, 20–3B–2(a) [1987], part of the West Virginia Whitewater Responsibility Act of 1987, refers to *W.Va.Code*, 20–2–23 [1987] for the definition of a "commercial whitewater outfitter[.]" The latter is defined in the first paragraph of subsection (c) of *W.Va.Code*, 20–2–23 [1987] as follows:

    The term 'commercial whitewater outfitter,' as used herein, means any person, partnership, corporation or other organization, or any combination thereof, duly authorized and operating from within or from without the state, which for monetary profit or gain, provides whitewater expeditions or rents whitewater craft or equipment for use in whitewater expeditions on any river, portions of rivers or waters of the state in accordance with this article.

2. *W.Va.Code*, 20–3B–2(b) [1987], part of the West Virginia Whitewater Responsibility Act of 1987, refers to *W.Va.Code*, 20–2–23 [1987] for the definition of a "commercial whitewater guide[.]" The latter is defined in the second paragraph of subsection (c) of *W.Va.Code*, 20–2–23 [1987] as follows: "The term 'commercial whitewater guide,' as used herein, means any person who is an owner, agent or employee of a commercial whitewater outfitter, and who is qualified and authorized to provide services for whitewater expeditions in the state in accordance with this article."

ated by the defendant which had become stuck among some rocks in the river rapids. In attempting to dislodge the other raft by bumping it intentionally with the raft in which the plaintiff was riding, the plaintiff was forcefully thrown in her raft, causing, *inter alia,* serious injuries to one of her knees and one of her ankles.

Immediately prior to embarking upon the whitewater rafting trip, the plaintiff had signed a form document entitled "Raft Trip Release, Assumption of Risk & Permission[,]" the pertinent terms of which are set forth in the margin.[3]

After being injured the plaintiff timely brought a personal injury action against the defendant in the trial court, the Circuit Court of Fayette County, alleging that the defendant's guide "negligently, carelessly and *recklessly* " caused her injuries. (emphasis added) The defendant moved for summary judgment based upon the anticipatory release. The plaintiff moved for partial summary judgment, claiming that such release was void as contrary to public policy, in that commercial whitewater outfitters' activities are regulated by law and, therefore, may not be the subject of such a release.

The plaintiff opposed the defendant's motion for summary judgment by filing an affidavit of an experienced whitewater rafting guide whose opinion was that there were reasonable alternatives to the type of rescue operation undertaken here which would have posed no risk of harm to the occupants of the plaintiff's raft. The plaintiff also filed her own affidavit in which she stated that she was not informed in advance of the possibility of rescue operations of other rafts by the intentional "bumping" of them by the raft in which she was riding. In her own affidavit the plaintiff also stated that she never contemplated that the release applied to such intentional acts but only to ordinary negligence in the form of piloting mistakes associated with a "normal trip down the river[.]"

The trial court, relying upon the release, granted the defendant's motion for summary judgment and denied the plaintiff's motion for partial summary judgment.

## II

■ Generally, in the absence of an applicable safety statute, a plaintiff who *expressly* and, under the circumstances, *clearly* agrees to accept a risk of harm

---

**3.** In that document, prepared by the defendant, the plaintiff acknowledged she was aware that

during the raft trip in which I am participating under the arrangements of North American River Runners, Inc., a corporation, or West Virginia River Adventures, Inc., a corporation, their agents and employees, certain risks and dangers exist or may occur, including, but not limited to, hazards of traveling on a rubber raft in rough river conditions using paddles or oars and other raft equipment, hiking in rugged terrain, being injured by animals, reptiles or others, becoming ill in remote places without medical facilities available, and being subject to the forces of nature....

In consideration of the right to participate in such river trip, including transportation, meals, and other activities and services arranged for me by North American River Runners, Inc., or West Virginia River Adventures, Inc., or both, their agents, and employees, **I UNDERSTAND AND DO HEREBY AGREE TO ASSUME ALL OF THE ABOVE RISKS AND OTHER RELATED RISKS WHICH MAY BE ENCOUNTERED ON SAID RAFT TRIP, INCLUDING ACTIVITIES PRELIMINARY AND SUBSEQUENT THERETO. I**

do hereby agree to hold North American River Runners, Inc., and West Virginia River Adventures, Inc., their agents and employees, harmless from any and all liability, actions, causes of actions, claims, expenses, and damages on account of injury to my person or property, even injury resulting in death, which I now have or which may arise in the future in connection with my trip or participation in any other associated activities....

I expressly agree that this release, waiver and indemnity agreement is intended to be as broad and inclusive as permitted by the law of the State of West Virginia and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect. This release contains the entire agreement between the parties hereto and the terms of this release are contractual and not a mere recital.

....

I further state that **I HAVE CAREFULLY READ THE FOREGOING RELEASE AND KNOW THE CONTENTS THEREOF AND I SIGN THIS RELEASE AS MY OWN FREE ACT.** This is a legally binding document which I have read and understand. (emphasis in original)

arising from the defendant's negligent or reckless conduct may not recover for such harm, unless the agreement is invalid as contrary to public policy. *Restatement (Second) of Torts* § 496B (1963, 1964) (express assumption of risk).[4] When such an express agreement is freely and fairly made, between parties who are in an equal bargaining position, and there is no public interest with which the agreement interferes, it generally will be upheld. *Restatement (Second) of Torts* § 496B comment b (1963, 1964). *See also Prosser and Keeton on the Law of Torts* § 68, at 480–81, 482 (W. Keeton 5th ed. 1984); 3 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 12:48, at 640–41 (1986); 6A A. Corbin, *Corbin on Contracts* § 1472, at 596–97 (1962 and Supp.1991); 15 S. Williston, *A Treatise on the Law of Contracts* § 1750A, at 144–45 (3d ed. 1972 & Supp. 1991); 57A Am.Jur.2d *Negligence* §§ 49, 53 (1989).[5]

■ A clause in an agreement exempting a party from tort liability is, however, unenforceable on grounds of public policy if, for example, (1) the clause exempts a party charged with a duty of public service from tort liability to a party to whom that duty is owed, or (2) the injured party is similarly a member of a class which is protected against the class to which the party inflicting the harm belongs. *Restate-*

*ment (Second) of Contracts* § 195(2)(b)–(c) (1979).

■ An example of the second situation just mentioned is that when a statute imposes a standard of conduct, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for the failure to conform to that statutory standard is unenforceable. *Restatement (Second) of Contracts* § 195 comment a, at 66 (1979). *See also Restatement (Second) of Contracts* § 179(a) (1979) (a public policy against enforcement of promises or other terms may be derived by the court from legislation relevant to such a policy); *Mulder v. Casho*, 61 Cal.2d 633, 394 P.2d 545, 547, 39 Cal.Rptr. 705, 707 (1964) (en banc); *Fedor v. Mauwehu Council, Boy Scouts of America, Inc.*, 21 Conn. Supp. 38, 143 A.2d 466, 467 (1958); *Prosser and Keeton on the Law of Torts* § 68, at 493 (W. Keeton 5th ed. 1984); 57A Am. Jur.2d *Negligence* §§ 56, 57 (1989). Thus, a plaintiff's express agreement to assume the risk of a defendant's violation of a safety statute enacted for the purpose of protecting the public will not be enforced; the safety obligation created by the statute for such purpose is an obligation owed to the public at large and is not within the power of any private individual to waive. *See, e.g., Mulder v. Casho*, 394 P.2d at 547, 39 Cal.Rptr. at 707.[6]

---

**4.** *See also Restatement (Second) of Torts* § 503(4) & comment d (1963, 1964) (plaintiff who expressly and voluntarily assumes risk arising from defendant's reckless disregard of plaintiff's safety is barred from recovery for such harm). *Cf. Restatement (Second) of Torts* § 892A (1977) (express consent to intentional invasion of interests). In these situations the plaintiff *expressly* has consented that no duty arises for the defendant to exercise care to prevent the harm in question.

In contrast, in West Virginia, an *implied* assumption of the risk is *not* available as a defense to a defendant who is guilty of willful or wanton conduct which injures a plaintiff. *King v. Kayak Manufacturing Corp.*, 182 W.Va. 276, 283, 387 S.E.2d 511, 518 (1989); syl. pt. 4, *Korzun v. Shahan*, 151 W.Va. 243, 151 S.E.2d 287 (1966); syl. pt. 6, *Stone v. Rudolph*, 127 W.Va. 335, 32 S.E.2d 742 (1944).

**5.** *But see Restatement (Second) of Contracts* § 195(1) (1979) (clause in agreement exempting party from tort liability for harm caused inten-

tionally or recklessly is unenforceable on grounds of public policy). However, comment *a* to that section recognizes that one party's express consent may give the other party a defense under the law of torts, citing, for example, *Restatement (Second) of Torts* § 892A, *see supra* note 4.

**6.** With respect to the first situation mentioned above, a pre-injury exculpatory agreement, also called an anticipatory release, will not be enforced on public policy grounds when a provider of a "public service," such as a public utility or a common carrier, is the alleged tortfeasor. A "public service" in this context involves a transaction that exhibits some or all of the following characteristics:

(1) it concerns a business of a type generally thought suitable for public regulation;

(2) the party seeking exculpation is engaged in performing a service of great importance to the public and which is often a matter of practical necessity for some members of the public;

In order for an express agreement assuming the risk to be effective, it must appear that the plaintiff has given his or her assent to the terms of the agreement. Particularly where the agreement is prepared by the defendant, it must appear that the terms were in fact brought home to, and understood by, the plaintiff, before it may be found that the plaintiff has agreed to them. *Restatement (Second) of Torts* § 496B comment c (1963, 1964). Stated another way, "to relieve a party from liability for his [or her] own negligence by contract, language to that effect must be clear and definite." *Bowlby–Harman Lumber Co. v. Commodore Services, Inc.*, 144 W.Va. 239, 248, 107 S.E.2d 602, 607 (1959).

■ Moreover, in order for the express agreement to assume the risk to be effective, it must also appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm. To determine whether there was such intent, when the agreement is prepared by the defendant, its terms will be construed strictly against the defendant. *See, e.g., Rosen v. LTV Recreational Development, Inc.*, 569 F.2d 1117, 1122–23 (10th Cir.1978).

■ In particular, a general clause in a pre-injury exculpatory agreement or anticipatory release purporting to exempt a defendant from all liability for any future loss or damage will not be construed to include the loss or damage resulting from the defendant's intentional or reckless misconduct or gross negligence, unless the circumstances clearly indicate that such was the plaintiff's intention. Similarly, a general clause in an exculpatory agreement or anticipatory release exempting the defendant from all liability for any future negligence will not be construed to include intentional or reckless misconduct or gross negligence, unless such intention clearly appears from the circumstances. *Restatement (Second) of Torts* § 496B comment d (1963, 1964). *See also Prosser and Keeton on the Law of Torts* § 68, at 483–84 (W. Keeton 5th ed. 1984); 3 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 12:48, at 642 (1986); 57A Am. Jur.2d *Negligence* § 65 (1989).

■ These specific rules of anticipatory release construction are related to the general rule that "[a] release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the

(3) such party holds itself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards;

(4) because of the essential nature of the service, and the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks such service;

(5) in exercising a superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees to obtain protection against negligence;

(6) the person or property of members of the public seeking such services must be placed under the control of the furnisher of the services, subject to the risk of carelessness on the part of such furnisher or its servants.

These characteristics of a "public service" were set forth in the leading case of *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 383 P.2d 441, 444–46, 32 Cal.Rptr. 33, 36–38 (1963) (en banc). *See generally* Note, *Shielding Against Future Negligence Liability: The Role of Exculpatory Contract Provisions in Personal Injury Actions*, 12 W.St. U.L.Rev. 819 (1985).

In the case now before this Court, *amicus curiae*, the West Virginia Professional River Outfitters, Inc., contends that the provision of services for a whitewater rafting expedition do not constitute a "public service" within the meaning of *Tunkl.* Citing, for example, *Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1066 (Wyo.1988) (skiing), *amicus curiae* asserts that inherently hazardous recreational or amusement activity businesses do not provide a "public service" under *Tunkl* because, primarily, such activities do not involve essential services. *See also Restatement (Second) of Contracts* § 195 reporter's note to comment a, at 68 (1979); annotation, *Validity, Construction, and Effect of Agreement Exempting Operator of Amusement Facility from Liability for Personal Injury or Death of Patron*, 8 A.L.R.3d 1393 (1966 & Supp.1991).

We agree with this particular point, but, as discussed in the text below, we believe that pre-injury exculpatory agreements or anticipatory releases for inherently hazardous recreational or amusement activities usually will be unenforceable when they involve a violation of statutory safety standards or intentional or reckless misconduct or gross negligence.

parties at the time of its execution." Syl. pt. 2, *Conley v. Hill*, 115 W.Va. 175, 174 S.E. 883 (1934), *overruled on another point in* syl. pt. 4, *Thornton v. Charleston Area Medical Center*, 158 W.Va. 504, 213 S.E.2d 102 (1975). *Accord*, syl. pt. 2, *Cassella v. Weirton Construction Co.*, 161 W.Va. 317, 241 S.E.2d 924 (1978).

▆▆ This Court agrees with the view that language in a pre-injury exculpatory agreement or anticipatory release stating that a defendant is relieved in effect from all liability for any future loss or damage is sufficiently *clear* to waive a common-law negligence action, even though the language does not include explicitly the words "negligence" or "negligent acts or omissions"; these "magic words" are not essential to a clear waiver of the right to bring a common-law negligence action, if the contract as a whole and the circumstances at the time of its execution indicate that both parties intended that waiver. *Krazek v. Mountain River Tours, Inc.*, 884 F.2d 163, 166 (4th Cir.1989) (whitewater rafting expedition; anticipating West Virginia law). *Krazek*, however, did not address the validity of an express waiver of a tort claim based upon an alleged breach of a *statutory* safety standard and did not involve a claim of *reckless* conduct by the defendant.

Effective March 12, 1987,[7] which was prior to the operative facts in this case, the legislature enacted the West Virginia Whitewater Responsibility Act, *W.Va. Code*, 20–3B–1 to 20–3B–5 [1987] ("the Act"). The purpose of the Act was "to define those areas of responsibility and affirmative acts for which commercial whitewater outfitters and commercial whitewater guides are liable for loss, damage or injury[,]" in light of the fact that it is "essentially impossible" for such outfitters and guides to eliminate the "inherent risks in the recreational activities provided by" them. *W.Va.Code*, 20–3B–1 [1987].[8]

The Act imposes in general terms certain statutory duties upon commercial whitewater outfitters and commercial whitewater guides; recognizes liability for violation of these statutory duties; and immunizes commercial whitewater outfitters and commercial whitewater guides from tort liability to participants in whitewater rafting expeditions for harm resulting from the inherent risks of this recreational activity which are essentially impossible to eliminate regardless of all feasible safety measures. *W.Va.Code*, 20–3B–3 [1987], 20–3B–5 [1987].[9]

▆▆ *W.Va.Code*, 20–3B–3(b) [1987], *see supra* note 9, requires commercial white-

---

7. 1987 *W.Va.Acts* ch. 148.

8. The entire text of *W.Va.Code*, 20–3B–1 [1987] is as follows:

Every year, in rapidly increasing numbers, the inhabitants of the state of West Virginia and nonresidents are enjoying the recreational value of West Virginia rivers and streams. The tourist trade is of vital importance to the state of West Virginia and the services offered by commercial whitewater outfitters and commercial whitewater guides significantly contribute to the economy of the state of West Virginia. The Legislature recognizes that there are inherent risks in the recreational activities provided by commercial whitewater outfitters and commercial whitewater guides which should be understood by each participant. It is essentially impossible for commercial whitewater outfitters and commercial whitewater guides to eliminate these risks. It is the purpose of this article to define those areas of responsibility and affirmative acts for which commercial whitewater outfitters and commercial whitewater guides are liable for loss, damage or injury.

The West Virginia Skiing Responsibility Act, *W.Va.Code*, 20–3A–1 to 20–3A–8 [1984], is very similar to the West Virginia Whitewater Responsibility Act. This Court recently upheld the constitutionality of the West Virginia Skiing Responsibility Act in *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991). The plaintiff in the present case has not challenged the constitutionality of the West Virginia Whitewater Responsibility Act.

9. *W.Va.Code*, 20–3B–5 [1987] provides, in relevant part:

It is recognized that some recreational activities conducted by commercial whitewater outfitters and commercial whitewater guides are hazardous to participants regardless of all feasible safety measures which can be taken.

(a) No licensed commercial whitewater outfitter or commercial whitewater guide acting in the course of his [or her] employment is liable to a participant for damages or injuries to such participant unless such damage or injury was directly caused by failure of the commercial whitewater outfitter or commercial whitewater guide to comply with duties placed on him [or her] by article two of this

water guides to "conform to the standard of care expected of members of their profession." This statute establishes such standard of care as a statutory safety standard for the protection of participants in whitewater rafting expeditions. As stated previously, when a statute imposes a standard of care, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for failure to conform to that statutory standard is unenforceable. Therefore, to the extent that the anticipatory release in the present case purports to exempt the defendant from tort liability to the plaintiff for the failure of the defendant's guide to conform to the standard of care expected of members of his occupation, it is unenforceable. *See also Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 693, 408 S.E.2d 634, 643 (1991) (ski area operator liable for violation of statutory duty to maintain ski area in reasonably safe condition).

■ The affidavit on behalf of the plaintiff in opposition to the defendant's motion for summary judgment avers, in essence, a failure of the defendant's guide to conform to the standard of care expected of members of his occupation, for that affidavit by an experienced whitewater rafting guide alleges that there were reasonable alternatives to the type of rescue operation undertaken here which would have posed no risk of harm to the occu-

pants of the plaintiff's raft. This allegation raises a genuine issue as to a material fact, and the trial court consequently should not have granted the defendant's motion for summary judgment. *See W.Va. R.Civ.P.* 56(c).

■ Furthermore, the complaint here explicitly alleges that the defendant's conduct was reckless, as well as negligent.[10] As stated previously, a general clause in a pre-injury exculpatory agreement or anticipatory release purporting to exempt a defendant from all liability for any future loss or damage will not be construed to include the loss or damage resulting from the defendant's intentional or reckless misconduct or gross negligence, unless the circumstances clearly indicate that such was the plaintiff's intention. This rule parallels the rule that "[a] release is construed from the standpoint of the parties at the time of its execution. Extrinsic evidence is admissible to show both the relation of the parties and the circumstances which surrounded the transaction." Syl. pt. 1, *Cassella v. Weirton Construction Co.*, 161 W.Va. 317, 241 S.E.2d 924 (1978). Similarly:

'"While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical con-

---

chapter, by the rules of the commercial whitewater advisory board, or by the duties placed on such commercial whitewater outfitter or commercial whitewater guide by the provisions of this article.

The statutory duties are set forth in general terms in *W.Va.Code,* 20–3B–3 [1987]:

(a) All commercial whitewater outfitters and commercial whitewater guides offering professional services in this state shall provide facilities, equipment and services as advertised or as agreed to by the commercial whitewater outfitter, commercial whitewater guide and the participant. All services, facilities and equipment provided by commercial whitewater outfitters and commercial whitewater guides in this state shall conform to safety and other requirements set forth in article two of this chapter and in the rules promulgated by the commercial whitewater advisory board created by section twenty-three-a, article two of this chapter.

(b) In addition to the duties set forth in subsection (a) of this section, *all commercial whitewater guides providing services for whitewater expeditions in this state shall, while providing such services, conform to the standard of care expected of members of their profession.*

(emphasis added)

**10.** We do not attribute to the *legislature* the intent to immunize commercial whitewater outfitters or commercial whitewater guides from liability for intentional or reckless misconduct or gross negligence. *See Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 693, 408 S.E.2d 634, 643 (1991) (same under Skiing Responsibility Act). On the other hand, we also do not attribute to the legislature the intent that the *parties* may not have the contractual freedom to agree that the plaintiff assumes the risk of such conduct.

struction given to the contract by the parties themselves either contemporaneously or subsequently. If the parol evidence be not in conflict, the court must construe the writing; but if it be conflicting on a material point necessary to interpretation of the writing, then the question of its meaning should be left to the jury under proper hypothetical instructions." Syllabus Point 4, *Watson v. Buckhannon River Coal Co.*, 95 W.Va. 164, 120 S.E. 390 (1923).' Syllabus Point 1 [sic; sole syllabus point], *McShane v. Imperial Towers, Inc.*, [165] W.Va. [94], 267 S.E.2d 196 (1980).

Syl. pt. 1, *Leasetronics, Inc. v. Charleston Area Medical Center, Inc.*, 165 W.Va. 773, 271 S.E.2d 608 (1980). *Accord,* syl. pt. 2, *Hays & Co. v. Ancro Oil & Gas, Inc.*, No. 20213, 186 W.Va. 153, 411 S.E.2d 478 (1991).

■■■■■ In light of the inquiry needed here concerning the relation of the parties and the circumstances surrounding the execution of the anticipatory release in order to determine the parties' intent with respect to reckless conduct of the defendant, the trial court improperly granted the defendant's motion for summary judgment. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). *Accord,* syl. pt. 1, *Hays & Co. v. Ancro Oil & Gas, Inc.*, 186 W.Va. 153, 411 S.E.2d 478 (1991).[11]

Accordingly, this Court reverses and vacates the summary judgment entered in favor of the defendant and remands this case for further proceedings consistent with this opinion.

Reversed and remanded.

---

**11.** The plaintiff did not raise the "contract of adhesion" issue before the trial court. We, therefore, do not address that issue. The parties should develop the facts on the contract of adhesion issue on remand.