672 S.E.2d 376

**RIVER RIDERS, INC., and Matthew Knott, Petitioners,**

**v.**

**The Honorable Thomas W. STEPTOE, all Plaintiffs in the Christopher et al. v. River Riders, Inc., Civil Action No. 06–C–328, and All Plaintiffs in Freeman Civil Action No. 06–C–325, Respondents.**

No. 34206.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 28, 2008.

Decided Dec. 10, 2008.

---

Robert P. Martin, Esq., Justin C. Taylor, Esq., Jared M. Tully, Esq., Bailey & Wyant, P.L.L.C., Charleston, for Petitioners.

Michael A. Barcott, Esq., Holmes Weddle & Barcott, P.C., Seattle, WA, Pro Hac Vice Attorney for Petitioners.

Daniel R. Schuda, Schuda & Associates, Charleston, for Amicus Curiae West Virginia Professional River Riders.

Stephen G. Skinner, Esq., Laura C. Davis, Esq., Skinner Law Firm, Charles Town, for Respondent, Kathy L. Freeman.

Paul D. Bekman, Esq., Salsbury, Clements, Beckman, Marder & Adkins, LLC, Baltimore, MD, Pro Hac Vice Attorney for Respondents, The Christopher Plaintiffs.

Mark Jenkinson, Esq., Burke, Schultz, Harman, and Jenkinson, Martinsburg, for Respondents, The Christopher Plaintiffs.

BENJAMIN, Justice:[1]

Petitioners, River Riders, Inc. and Matthew Knott, seek a writ of prohibition to vacate three pre-trial orders of the Circuit Court of Jefferson County that (1) excluded from the forthcoming trial the Release and Assumption of Risk Agreements that had been signed by fourteen plaintiffs prior to embarking on a whitewater rafting expedition provided by the Petitioners; (2) ruled that the rafting incident was governed by

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

general maritime law, thus, precluding assumption of the risk as a defense; and (3) consolidated the civil action of the personal representative of the estate of the decedent with the civil action brought by thirteen injured persons. After careful consideration of the memoranda[2] and arguments in this proceeding, as well as the pertinent legal authorities, we grant the writ sought only to the extent of vacating the circuit court's ruling finding that the rafting incident is governed by maritime law.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This original proceeding in prohibition arose out of a commercial whitewater rafting accident on the Shenandoah River in Jefferson County, West Virginia, which resulted in the death of one person and injuries to thirteen others, all paying participants in a rafting expedition taken with River Riders, Inc., a licensed commercial whitewater outfitter.[3] As a result of the accident, two separate lawsuits against River Riders ensued. The first action was filed by Kathy L. Freeman [hereinafter referred to as the "Freeman plaintiff"], as personal representative of the estate of her husband, the decedent, Roger Freeman.[4] The second action was filed by the thirteen injured persons and seven of their spouses [hereinafter collectively referred to as the "Christopher plaintiffs"] who claimed loss of consortium.[5]

2. We wish to acknowledge the participation of the West Virginia Professional River Outfitters amicus curiae in support of Petitioners and appreciate their participation in this action.

3. The accident, which occurred on September 30, 2004, involved four inflatable rafts which dumped Roger Freeman and thirteen of the Christopher plaintiffs into the Shenandoah River, causing Mr. Freeman to drown, and causing various personal injuries to the others. All but two of the fourteen were management employees of Kaiser Permanente of suburban Washington, D.C. It is claimed that on this particular day, the level of water on the Shenandoah River was approximately 12.5 feet, compared to a normal average level of 2 to 4 feet during that time of year.

Prior to embarking on the rafting expedition, Roger Freeman and each of the injured Christopher plaintiffs signed a "Release, Assumption of Risk and Indemnity Agreement" [hereinafter sometimes referred to as "Release Agreement"] provided to them by River Riders. In that agreement, each signatory (1) acknowledged that he or she had requested to be allowed to participate in whitewater rafting provided by River Riders; and expressed his or her understanding, among other things, that "[whitewater rafting] **activities and services pose substantial risks of injury or death**... as the result of exposure; ... or being in whitewater rivers and streams; ... the negligence, gross negligence, or bad judgment by [the signatory], River Riders, Inc., or other participants; the failure or misuse of equipment; ... and other known and foreseeable risks of [whitewater rafting]." (Emphasis in original). The signatories to the Release Agreement also agreed, in part, that:

> In consideration of and as partial payment for being allowed to participate in [whitewater rafting] provided by River Riders, Inc., I ASSUME, to the greatest extent permitted by law, all of the risks, whether or not specifically identified herein, of all the activities in which I participate and services I use [whitewater rafting]; I RELEASE River Riders, Inc. from any and all liability, including, but not limited to, liability arising from negligence, gross negligence, willful and wanton and intentional conduct; ...

4. The Freeman lawsuit also names Matthew Knott, owner of River Riders, as a defendant. Mr. Knott is also alleged to have been a commercial whitewater guide who guided one of the rafts on the ill-fated expedition and who served as the trip's leader.

5. In the second of the complaints, Timothy Friddle, husband of Cristina Renee Friddle, is named as a plaintiff. They claim "loss of consortium and services, and interference with and injury to their marital relationship." Timothy Friddle is not, however, named as a spouse and as plaintiff in the Memorandum which these plaintiffs filed with this Court in this proceeding. The Petitioners represent that Mr. Friddle has been voluntarily dismissed from the action.

The Freeman plaintiff and the Christopher plaintiffs contend that River Riders failed to meet the statutory "standard of care" expected of members of the whitewater guide profession in direct violation of the West Virginia Whitewater Responsibility Act, W. Va. Code § 20–3B–3(b) (1987).[6] In both actions, they assert that running a raft trip on September 30, 2004, simply was not reasonable under the circumstances, and that the expected standard of care would have obligated River Riders to cancel or reschedule the whitewater expedition on that day because of the river's high and turbulent waters caused by a recent hurricane that had swept through the area.[7] Specifically, Respondents argue that River Riders was negligent and careless and failed to conform to the standard of care by failing to call off or postpone the trip until conditions were safe to go out on the river, by failing to recognize that the operating capabilities of its rafts with the inexperienced customers would be unsafe and hazardous in high, swift and rough water conditions; and by wrongfully electing to navigate the Shenandoah River and in particular the Shenandoah Staircase.[8]

Prior to the forthcoming trial in this matter, the Freeman plaintiff filed a Motion *in Limine* to exclude the Release Agreement[9] that had been signed by Mr. Freeman. On January 30, 2008, the circuit court, in finding that the issues at trial on liability were whether the defendants met the standard of care required under the Whitewater Responsibility Act, entered an order granting the Motion *in Limine* prohibiting the defendants from introducing the Release Agreement, making any reference to it, or eliciting any information regarding it at trial. The circuit court based it ruling on the language of W. Va.Code § 20–3B–3(b), and on this Court's prior decision in *Murphy v. North American River Runners, Inc.*, 186 W.Va. 310, 412 S.E.2d 504 (1991)[10] and on *Johnson v. New*

---

**6.** In 1987, the Legislature enacted the Whitewater Responsibility Act, codified as W. Va.Code §§ 20–3B–1 *et seq.* (1987). Therein, the Legislature stated that it "recognizes that there are inherent risks in the recreational activities provided by commercial whitewater outfitters and commercial whitewater guides which should be understood by each participant. It is essentially impossible for commercial whitewater outfitters and commercial whitewater guides to eliminate these risks. It is the purpose of this article to define those areas of responsibility and affirmative acts for which commercial whitewater outfitters and commercial whitewater guides are liable for loss, damage or injury." W. Va.Code § 20–3B–1.

The Act declares that "[n]o licensed commercial whitewater outfitter or commercial whitewater guide acting in the course of his employment is liable to a participant for damages or injuries to such participant unless such damage or injury was directly caused by failure of the commercial whitewater outfitter or commercial whitewater guide to comply with duties placed on him by article two of this chapter, by the rules of the commercial whitewater advisory board, or by the duties placed on such commercial whitewater outfitters or commercial whitewater guide by the provisions of this article." W. Va.Code § 20–3B–5(a).

Among the duties imposed by the Whitewater Responsibility Act upon all commercial whitewater guides providing services for whitewater expeditions in this state is that they "while providing such services, conform to the standard of care expected of members of their profession." W. Va.Code § 20–3B–3(b).

**7.** The Freeman plaintiff represents to the Court that the liability issues are exactly the same in both cases.

**8.** The wrongful death complaint filed by the Freeman plaintiff contains two separate counts: one for negligence, gross negligence, reckless and wanton conduct; the other for negligence *per se.* Citing fifteen alleged acts or omissions, Count One alleges that the duties owed by River Riders to Mr. Freeman included the duty to conform to the standard of care expected of members of their profession, the duty to conform to safety and other requirements set forth in the West Virginia Code, the duty to conform to rules promulgated by the commercial whitewater advisory board, and the duty not to act in a reckless or wanton manner. Count Two alleges two additional acts or omissions constituting negligence *per se,* including citations by the West Virginia Division of Natural Resource for failure to mark a commercial water craft and failure to have a valid CPR card as required by W. Va.Code § 20–2–23a (1999) and 58 C.S.R. 12 (2008).

The complaint filed by the Christopher plaintiffs contains twenty counts, seven of which assert loss of consortium claims. The remaining thirteen counts are negligence claims under general maritime law, one for each injured plaintiff.

**9.** The Freeman Plaintiff also filed a Motion for Judgment on the Pleadings which the circuit court denied.

**10.** In *Murphy,* this Court held that generally, in the absence of an applicable statute, a plaintiff

*River Scenic Whitewater Tours, Inc.*, 313 F.Supp.2d. 621 (S.D.W.Va.2004).

Thereafter, on April 15, 2008, the circuit court likewise granted a Motion *in Limine* Regarding Release and Assumption of the Risk filed by the Christopher plaintiffs, which excluded the release agreement from trial. The circuit court, finding that maritime law governed the case, held that assumption of the risk was not an available defense. Specifically, the court held:

> Second, this Court is of the opinion that assumption of the risk is not an available defense in this maritime action. Because the incident occurred on the Shenandoah River, a navigable body of water, it is governed by general maritime law. *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Assumption of the risk is not a defense in admiralty or maritime law. *DeSole v. United States,* 947 F.2d 1169, 1175 (4th Cir.1991). In fact, "[t]he tenants of admiralty law, which are expressly designed to promote uniformity, do not permit assumption of risk in cases of person [sic] injury whether in commercial or recreational situation." *Id.* The foundation of this principle has been recognized for more than 70 years. In *The Arizona v. Anelich,* Justice Harlan F. Stone, stated in support of his position that assumption of the risk was not a proper defense in cases of unseaworthiness, "No American case appears to have recognized assumption of risk as a defense by such a suit." 298 U.S. 110, 122, 56 S.Ct. 707, 80 L.Ed. 1075 (1936). Accordingly, Defendant is prohibited from asserting the defense of assumption of the risk or making any argument in support of this defense at trial.

To the left of the judge's signature on the order, there appeared a stamped "Note to Counsel", which reads, "[t]he court has received no pleadings in opposition to this motion during the time period contemplated by trial court rule 22 order." Subsequent to the circuit court's ruling on those issues, Petitioners filed a Motion for Relief from the circuit court's order on April 23, 2008, to clarify that it had in fact filed a response to plaintiffs' motion *in limine,* but that it was untimely filed due to excusable neglect.[11] Petitioners urged the circuit court to consider its reply.

In a third order entered on May 19, 2008, the circuit court granted the Christopher plaintiffs' motion to consolidate their case with the case of the Freeman plaintiff under Case No. 06–C–328. In granting the motion, the circuit court considered the four factors set forth in Syllabus Point 2, *State ex rel. Appalachian Power Company v. Ranson,* 190 W.Va. 429, 438 S.E.2d 609 (1993) in exercising its discretion when deciding issues of consolidation under Rule 42(a) of the *West Virginia Rules of Civil Procedure.* The circuit court expressly declined Petitioner's request to bifurcate the cases on the issue of damages, stating that "the issue of liability and damages are intertwined and not reasonably susceptible of being bifurcated."

Following the entry of the third order, Petitioners invoked the original jurisdiction of this Court in prohibition seeking a writ to vacate the three circuit court orders of January 30, 2008, April 15, 2008, and May 19, 2008. Petitioners assert that the circuit court's rulings are incorrect for several reasons: (1) the Release Agreements are admissible as evidence because they contain warnings of the inherent risks of participating in whitewater rafting, and to the extent the Agreements contain inadmissible or unenforceable provisions, those provisions could be redacted therefrom; (2) maritime jurisdiction does not extend to this whitewater rafting case on the Shenandoah River because the Whitewater Responsibility Act is controlling, as the Shenandoah River is not a navigable waterway since it cannot be used for

---

who expressly and, under the circumstances, clearly agrees to accept a risk of harm arising from a defendant's negligent or reckless conduct may not recover for such harm, unless the agreement is invalid as contrary to public policy. 186 W.Va. 310, 412 S.E.2d 504.

**11.** Petitioners contended that the mailing, rather than faxing, of their responses to the motion on the last day of filing was a clerical error that should not result in completely ignoring their response to the motion, which resulted in the exclusion of a recognized common law defense in West Virginia, among other findings.

commercial shipping; (3) the circuit court failed to make any findings of fact regarding the navigability of the Shenandoah River; (4) assumption of the risk would be an available defense of the actions pursuant to controlling West Virginia law; (5) mandating the application of maritime law negates the West Virginia Whitewater Responsibility Act, and deprives the defendants of the defense of assumption of the risk, thus rendering all whitewater outfitters uninsurable and crippling a vital State industry; and (6) consolidating the two cases for trial will cause unfair prejudice and insure juror confusion as a result of the intertwining of unrelated legal, factual and damage issues in that one case is a wrongful death case, and the others are personal injury cases. Specifically, Petitioners claim that the circuit court's consolidation of the two cases will result in the application of maritime law to both actions, prohibiting the defense of assumption of the risk in both.

Conversely, the Christopher plaintiffs argue (1) that maritime law applies because the tort they complain of has a nexus to traditional maritime activity, and because the Shenandoah River is a navigable waterway; (2) that since there is no well-developed substantive maritime law of the issue of whitewater rafting safety, maritime law permits the circuit court to properly look to the West Virginia Whitewater Responsibility Act for guidance [12] and (3) that "[b]ecause there is no federal statute stating otherwise, the duty under maritime law is the same duty established under West Virginia's Whitewater Responsibility Act—that commercial whitewater outfitters and commercial whitewater guides 'conform to the standard of care expected of members of their profession.' W. Va.Code § 20–3B–3." It appears that the only facet of maritime law that the Respondents wish to have applied to this case is that assumption of the risk is not a defense.

## II.

### STANDARD OF ISSUANCE OF WRIT OF PROHIBITION

■ The standard for the issuance of a writ of prohibition is set forth in W. Va.Code § 53–1–1 (1882): "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers." In syllabus point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996) we held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Id.,* Syl. Pt. 4.

■ This Court has stated that "...prohibition... against judges [is a] drastic and extraordinary remed[y] ... As [an] extraordinary remed[y], [it is] reserved for really extraordinary causes." *State ex rel. United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 436, 460 S.E.2d 677, 682 (1995) (citations omitted); *State ex rel. Tucker County Solid Waste Authority v. West Virginia Division of Labor,* 222 W.Va. 588, 668

---

12. *Citing Tassinari v. Key West Water Tours, L.C.,* 2007 WL 1879172 (S.D.Fla.2007)(unpublished opinion); *Smith v. Haggerty,* 169 F.Supp.2d 376 (E.D.Pa.2001); and *Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc.,* 207 F.3d 1247, 1251 (11th Cir.2000).

S.E.2d 217, 2008 WL 2523591 (2008). Thus, we have held that:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*Id.* at Syl. Pt. 2 (*citing* Syllabus Point 1, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979)).

■■■ In syllabus point 3, *State ex rel. Shelton v. Burnside*, 212 W.Va. 514, 575 S.E.2d 124 (2002), this Court recognized "[i]n the absence of compelling evidence of irremediable prejudice, a writ of prohibition will not lie to bar trial based upon a judge's pretrial ruling on a matter of evidentiary admissibility." (*quoting* Syl. Pt. 2, *State ex rel. Williams v. Narick*, 164 W.Va. 632, 264 S.E.2d 851 (1980)). "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court." Syl. Pt. 4, 212 W.Va. 514, 575 S.E.2d 124. "The writ does not lie to correct 'mere errors' and ... it cannot serve as a substitute for appeal, writ of error or certiorari." *Narick*, 164 W.Va. at 635, 264 S.E.2d at 854.

This Court further stated in *Burnside* that:

> [t]here is a practical reason for not allowing challenges, by use of the writ of prohibition, to every pre-trial discretionary evidentiary ruling made by trial courts. Such use of the writ would effectively delay trials interminably while parties rushed to this Court for relief every time they disagree with a pre-trial ruling. The fact remains that "[t]he piecemeal challenge of discretionary rulings through writs of prohibition does not facilitate the orderly ad-

ministration of justice." *Woodall*, 156 W.Va. at 713, 195 S.E.2d at 721. Said another way, "writs of prohibition should not be issued nor used for the purpose of appealing cases upon the installment plan." *Wimberly v. Imel*, 358 P.2d 231, 232 (Okla. Crim.App., 1961).

212 W.Va. at 519, 575 S.E.2d at 129. Guided by these principles, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

■■■ Petitioners raise questions regarding three pretrial rulings made by the circuit court on two motions *in limine* and one motion to consolidate. We note as a preliminary matter that it is this Court's general practice and procedure to decline to consider rulings on motions *in limine*. This Court has recognized that "[t]hese motions necessarily involve the exercise of discretion, and the correctness of discretionary rulings should ordinarily be challenged at a time when the entire record is available to an appellate court. The piecemeal challenge of discretionary rulings through writs of prohibition does not facilitate the orderly administration of justice." *Woodall v. Laurita*, 156 W.Va. 707, 713, 195 S.E.2d 717, 720–21 (1973). Thus, in the absence of jurisdictional defect, the administration of justice is not well served by challenges to discretionary rulings of an interlocutory nature. These matters are best saved for appeal. *State ex rel. Allen v. Bedell*, 193 W.Va. at 37, 454 S.E.2d at 82 (Cleckley, J. concurring). As Justice Cleckley cautioned in his concurrence in *State ex rel. Allen v. Bedell:*

> Mere doubt as to the correctness of a trial court's ruling on a motion *in limine* regarding an evidentiary issue is an insufficient basis to invoke this Court's writ power. To justify this extraordinary remedy, the petitioner has the burden of showing that the lower court's jurisdictional usurpation was clear and indisputable and, because there is no adequate relief at law, the extraordinary writ provides the only available and adequate remedy. Thus, writs of prohibition, as well as writs of

mandamus and habeas corpus, should not be permitted when the error is correctable by appeal.

193 W.Va. at 37, 454 S.E.2d at 82.

This Court has, on limited occasions, considered challenges from evidentiary rulings in unique circumstances where the matter at issue rose to a level of considerable importance and compelling urgency.[13] In reviewing the claims asserted by Petitioners herein, which allege that the circuit court, by virtue of a motion *in limine*, made jurisdictional rulings that serve to have a significant and lasting negative impact on the question of liability for an important segment of business within this State, we find it appropriate to accept this matter for consideration at this stage in the proceedings.[14]

Having made the determination to consider this matter, we limit our review herein to the specific jurisdictional issue of the circuit court's finding that the rafting incident is governed by maritime law. We decline to address on a writ of prohibition the other issues presented regarding the exclusion of the Releases signed by the plaintiffs and the circuit court's consolidation of the two cases, to the extent that the circuit court's rulings were discretionary. As stated above, this Court's general rule provides that prohibition is ordinarily inappropriate in matters involving a trial court's pretrial ruling on the admissibility of evidence. *State ex rel. Shelton v. Burnside,* 212 W.Va. at 518, 575 S.E.2d at 128. Furthermore, "[a] decision by a trial court to consolidate civil actions on

**13.** *See State ex rel. Foster v. Luff,* 164 W.Va. 413, 419, 264 S.E.2d 477, 481 (1980) (prohibition granted where trial court abused discretion in failing to authorize expenditure of adequate funds to allow defense to secure experts); *State ex rel. Register–Herald v. Canterbury,* 192 W.Va. 18, 449 S.E.2d 272 (1994) (prohibition granted to reverse order constituting prior restraint against newspaper); *State ex rel. Tyler v. MacQueen,* 191 W.Va. 597, 447 S.E.2d 289 (1994) (prohibition used to review disqualification of prosecutor's office); *State ex rel. Leach v. Schlaegel,* 191 W.Va. 538, 447 S.E.2d 1 (1994) (prohibition granted to prevent relitigation of case which was foreclosed because of collateral estoppel); *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994) (prohibition used to review decision on lawyer's disqualification).

**14.** Respondents contend that the circuit court's order of April 15, 2008, cannot be challenged by the Petitioners, or is not before this Court in this extraordinary proceeding, because the Petitioners did not timely oppose the Christopher plaintiffs' motion *in limine* asking the circuit court to find that maritime law governed the case. Petitioners admit that a scheduling order required them to file their response to the motion *in limine* by April 10, 2008, but that through "clerical error" their response was mailed, not faxed, to the clerk and the court on April 10, 2008. Five days later, on April 15, 2008, the circuit court, having not received the mailed response, entered an order granting the motion. To the left of the judge's signature on the order, there appears a stamped "Note to Counsel", which reads, "[t]he court has received no pleadings in opposition to this motion during the time period contemplated by trial court rule 22 order." Petitioners contend that the mailing, rather than faxing, of their responses to the motion on the last day of filing was a clerical error that should not result in completely ignoring their response

to the motion, which resulted in the exclusion of a recognized common law defense in West Virginia, among other findings.

Rule 6(b) of the *West Virginia Rules of Civil Procedure* provides, in part, that "[w]hen ... by order of court an act is required or allowed to be done at or within a specified time ... the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done when the failure to act was the result of excusable neglect..." In *Pritt v. Vickers,* 214 W.Va. 221, 227, 588 S.E.2d 210, 216 (2003), the Court approvingly quotes this statement in 3 *Moore's Federal Practice* § 16.14: "[a] trial court may modify or amend a scheduling order only when 'good cause' is shown and the court grants leave to modify." *See also Walker v. Option One Mortgage Corporation,* 220 W.Va. 660, 665, 649 S.E.2d 233, 238 (2007) (trial courts should not permit parties to obtain extensions absent a showing of good cause). The record before us does not reveal that Petitioners filed a motion with the circuit court after the April 10, 2008, deadline to permit the belated filing of their response. If they did not, we cannot condone their failure, and their argument that this Court should, nevertheless, hear their argument that the circuit court incorrectly concluded that maritime law applies and that assumption of the risk is not a defense under that law. We will, however, consider the circuit court's order of April 15, 2008, in this regard because it raises questions of whether the circuit court has jurisdiction of the subject matter in controversy. Issues of jurisdiction may be raised by this Court *sua sponte. Ray v. Ray,* 216 W.Va. 11, 13, 602 S.E.2d 454, 456 (2004). Also, "[t]his Court may, *sua sponte,* in the interest of justice, notice plain error." Syl. Pt. 1, *Cartwright v. McComas,* 223 W.Va. 161, 672 S.E.2d 297 (2008).

**250**

any or all matters in issue under Rule 42(a) of the West Virginia Rules of Civil Procedure will be deferentially reviewed under an abuse of discretionary standard." *State ex rel. Appalachian Power Company v. MacQueen, III,* 198 W.Va. 1, 4, 479 S.E.2d 300, 303 (1996).

A trial court, pursuant to provisions of Rule 42, has a wide discretionary power to consolidate civil actions for joint hearing or trial and the action of a trial court in consolidating civil actions for a joint hearing or trial will not be reversed in the absence of a clear showing of abuse of such discretion and in the absence of a clear showing of prejudice to any one or more of the parties to civil actions which have been so consolidated.

Syl. Pt. 1, *Holland v. Joyce,* 155 W.Va. 535, 185 S.E.2d 505 (1971); *State ex rel. Appalachian Power Company v. MacQueen, III,* 198 W.Va. 1, 4, 479 S.E.2d 300, 303 (1996).

 Herein, Respondents allege that the instant petition should not be considered because Petitioners never requested that the circuit court set forth a detailed order including findings of fact and conclusions of law that support and form the basis of its decision, or informed the circuit court that it intended to seek an extraordinary writ to challenge the court's ruling. We held in *State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W.Va. 358, 367, 508 S.E.2d 75, 84:

A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

Syl. Pt. 6, 203 W.Va. 358, 508 S.E.2d 75.

While we recognize that there is generally a duty on the part of a party petitioning this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court to make a request that the trial court set forth findings of fact and conclusions of law prior to seeking prohibition, we will proceed to consider the maritime issue before us since it concerns a distinct issue of law involving the interpretation and application of a federal statute which may be resolved on the pleadings, orders and arguments before us. This Court has, on prior occasions, recognized that when we are able to resolve issues before the Court without a detailed order, it is not necessary to remand for the circuit court to provide findings of fact and conclusions of law. *See, e.g., Pruitt v. West Virginia Dept. of Public Safety,* 222 W.Va. 290, 664 S.E.2d 175 (2008) (*citing Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997)) (this Court is able to resolve issues before us without a detailed order and thus have no reason to remand for the circuit court to provide findings of fact and conclusions of law). *See also Toth v. Board of Parks and Recreation Com'rs,* 215 W.Va. 51, 55, 593 S.E.2d 576, 580 (2003); *Ward v. Cliver,* 212 W.Va. 653, 656, 575 S.E.2d 263, 266 (2002). Based upon the jurisprudence of the United States Supreme Court and the statutory laws of the State of West Virginia, we find, as a matter of law, that the activity of whitewater rafting does not invoke federal admiralty jurisdiction.

The question of whether or not the rafting accident on September 30, 2004, is governed by general maritime law presents a federal admiralty jurisdictional question.[15] Herein,

---

**15.** The United States Constitution provides in relevant part that "[t]he judicial Power shall extend... to all Cases of admiralty and maritime jurisdiction..." U.S. Const. Art. III, § 2, cl. 1. Pursuant to 28 U.S.C.A. § 1333 (1948 and 1949), "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1)

Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The United States Supreme Court interpreted this section in *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986) stating:

the circuit court concluded that because the incident occurred on the Shenandoah River, a navigable body of water, it is governed by general maritime law. The circuit court order cites to the decision *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 206, 116 S.Ct. 619, 623, 133 L.Ed.2d 578 (1996), as support for its ruling.

*Yamaha,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578, involved a collision between a twelve-year-old on a rented jet-ski and another recreational vehicle in territorial waters of the United States off a hotel frontage in Puerto Rico. The *Yamaha* Court found that because the case involved a watercraft collision on navigable waters, it fell within admiralty's domain. 516 U.S. at 206, 116 S.Ct. at 623. The *Yamaha* Court then cited to its other previous decisions in *Sisson v. Ruby,* 497 U.S. 358, 361–367, 110 S.Ct. 2892, 2895–2898, 111 L.Ed.2d 292 (1990), and *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 677, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982), which set forth the admiralty or maritime jurisdiction test for tort claims. "The test comprises two functional inquiries: first, the traditional "situs" analysis determining whether the tort was committed or the alleged injury occurred on navigable waters, and second, the more recently developed "nexus" analysis determining whether the alleged tort bears a significant relationship to traditional maritime activities." *Sisson,* 497 U.S. at 361–367, 110 S.Ct. at 2895–2898.

Subsequently, in *Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Supreme Court stated:

> After *Sisson,* then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water, 46 U.S.C.App. § 740. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," 497 U.S., at 363, 110 S.Ct., at 2896, to determine whether the incident has "a potentially disruptive impact on maritime commerce," *id.,* at 364, n. 2, 110 S.Ct., at 2896, n. 2. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.,* at 365, 364, and n. 2, 110 S.Ct., at 2897, 2896, and n. 2.

513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024. Thus, according to *Grubart,* federal admiralty law governs a tort action if the wrong occurred on navigable waters, and if the incident involved had the potential to disrupt maritime activity and the general character of the activity giving rise to the incident had a substantial relationship to traditional maritime activity.[16]

the "savings to suitors" clause ... allows litigants to bring in personam maritime actions in state courts. See Judiciary Act of 1789, § 9, 1 Stat. 76 ("savings to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it"); 28 U.S.C. § 1333 ... See also *Madruga v. Superior Court,* 346 U.S. 556, 560, n. 12, 74 S.Ct. 298, 300, n. 12, 98 L.Ed. 290 (1954) ... The "savings to suitors" clause leaves state courts competent to adjudicate maritime causes of action in proceedings *in personam* and means that "a state, 'having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit' so long as it does not attempt to [give *in rem* remedies or] make changes in the 'substantive maritime law.' " [citations omitted]. Stated another way, the "savings to suitors" clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-*Erie*" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.

477 U.S. at 222, 106 S.Ct. at 2494. *See also* Wright, Miller & Cooper, 14A Fed. Prac. & Proc. Juris.3d § 3672, and Am.Jur.2d Admiralty § 108.

16. The Fourth Circuit has recognized the *Grubart* jurisdictional test. *See Brock v. Lewis,* 86 F.3d 1148 (4th Cir.1996)(unpublished opinion). Other publications that provide discussion of the criteria for determining admiralty jurisdiction include:1 *The Law of Maritime Personal Injuries* § 10.1 (5th ed.) (2007) (stating that "[t]here is no doubt that under the current law recreational boating activities that give rise to personal injuries or death fall within admiralty jurisdiction if they satisfy the locus and nexus criteria for admi-

Based upon the United States Supreme Court's holding in *Grubart*, in order for the circuit court to find that general maritime law applies, it should have properly determined whether the rafting mishap and ensuing tort claims arising therefrom satisfied *both* prerequisite conditions of 1) location on the navigable waters and 2) connection with maritime activity. Failing to conduct such an analysis, the circuit court's order of April 15, 2008, concluded, in a single sentence, that "because the incident occurred on the Shenandoah River, a navigable body of water, it is governed by general maritime law." From its order, the circuit court appears to have only considered the first prong of the *Grubart* test in arriving at its conclusion that maritime law applied.[17]

 In addition to determining whether the incident occurred on navigable waters, the circuit court should have also analyzed whether the incident constituted "a potentially disruptive impact on maritime commerce" and that it had a "substantial relationship to traditional maritime activity" in order to satisfy the second nexus criterion. Applying the second prong of the *Grubart* test to the circumstances of the instant case, we find that the activity of whitewater rafting does not constitute traditional maritime activity and is therefore not governed by maritime law.

First, given the fact that the Shenandoah River maintains average depths of two feet,[18] it is hard to envision how the act of whitewater rafting could have a potentially disruptive impact on maritime commerce, to the extent that this area was unlikely a highly traveled thoroughfare over which trade and travel is conducted.[19] However, even assuming, for the sake of argument, that the incident that occurred during this whitewater rafting trip had a potentially disruptive impact on maritime commerce, it still did not bear a substantial relationship to traditional maritime activity.

The cases before us involve an unfortunate incident that occurred during the course of a recreational outing on a river that was unusually swollen with flood waters resulting from a hurricane. They do not concern piloting, shipping, or navigational error, or other aspects of traditional maritime activity. *Foster v. Peddicord*, 826 F.2d 1370, 1376 (4th Cir.1987). The requisite maritime connection is therefore missing.

It is particularly relevant that there is no existing federal or state precedent applying admiralty jurisdiction to the activity of whitewater rafting. Perhaps this is because the very nature of the activity of whitewater rafting is not the customary mode of travel or transportation with which maritime law has ever been concerned. Whitewater rafting is a recreational activity where participants seek the adventure of paddling a rubber raft in rapidly moving whitewater streams and rivers. Such use of streams and rivers carrying people, not as traveling passengers, but rather as participants seeking adventure, makes it difficult to conceive that whitewater rafting bears a substantial relationship to traditional maritime activity. For these reasons, we conclude that the circuit court committed clear error in determining

---

ralty tort jurisdiction."); *See also* Wright, Miller & Cooper, 14A Fed. Prac. & Proc. Juris.3d § 3676; *Admiralty Jurisdiction: Maritime Nature of Torts—Modern Cases.* 80 A.L.R. Fed. 105 (2008).

**17.** It is not necessary for this Court to discuss the propriety of the circuit court's findings regarding the location requirement to the extent that we find that the second part of the *Grubart* test is not satisfied. A party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1) over a tort claim must satisfy conditions *both* of location and of connection with maritime activity. With that said, we note that the circuit court provided no standards whereby it determined that the Shenandoah River is in fact a navigable river, and no facts to which it applied standards to make that determination. Based on the limited set of facts we have reviewed herein, we question how a river with average relevant depths of two feet that was used for whitewater rafting purposes could possibly be considered a navigable waterway for purposes of maritime jurisdiction.

**18.** This fact was represented by both the Petitioners and the Respondents.

**19.** See *Grubart*, 513 U.S. at 538–39, 115 S.Ct. at 1051 (the relevant inquiry is whether the general features of the mishap place it within a class of incidents that pose more than a fanciful risk to commercial shipping.)

that maritime law applies to the instant cases.

## IV.

## CONCLUSION

Accordingly, we grant the writ sought only to the extent of vacating the circuit court's ruling finding that the rafting incident is governed by maritime law. We remand this matter to the circuit court for entry of an order consistent with this opinion.

**Writ granted as moulded.**

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.