IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 15-0205

_____

FILED
November 18, 2015
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. PAMELA JEAN GAMES-NEELY,
PROSECUTING ATTORNEY OF BERKELEY COUNTY,
Petitioner

v.

THE HONORABLE GRAY SILVER III,
JUDGE OF THE CIRCUIT COURT OF BERKELEY COUNTY,
AND DONALD L. BOWERS,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION

WRIT GRANTED AS MOULDED

_____

Submitted: September 15, 2015
Filed: November 18, 2015

Timothy D. Helman, Esq.
Assistant Prosecuting Attorney of
 Berkeley County
Martinsburg, West Virginia
Counsel for the Petitioner

B. Craig Manford, Esq.
Martinsburg, West Virginia
Counsel for the Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "'In the absence of compelling evidence of irremediable prejudice, a writ of prohibition will not lie to bar trial based upon a judge's pretrial ruling on a matter of evidentiary admissibility.'  Syllabus Point 3, *State ex rel. Shelton v. Burnside*, 212 W. Va. 514, 575 S.E.2d 124 (2002)."  Syl. pt. 3, *River Riders, Inc. v. Steptoe*, 223 W. Va. 240, 672 S.E.2d 376 (2008).

2.      "Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction."  Syl. pt. 2, in part, *State ex rel. Sims v. Perry*, 204 W. Va. 625, 515 S.E.2d 582 (1999).

Benjamin, Justice:

In this original proceeding, the Prosecuting Attorney of Berkeley County, West Virginia, petitions for extraordinary relief in the underlying criminal matter, seeking to prohibit the circuit court from enforcing its rulings in limine pertaining to certain evidence the prosecution desired to introduce at the upcoming trial of Donald Bowers for alleged sex crimes against an eleven-year-old girl.[1] The prosecutor challenges a pair of orders issued by the circuit court, insofar as the effect of such orders would withhold from evidence a two-page entry in the child's diary and, as to the entries deemed admissible, prevent the jury from examining the physical diary itself. We conclude that the prosecutor is entitled to relief in prohibition regarding the circuit court's manifestly erroneous ruling that excluded the substantive two-page entry at issue; however, we do not deem the circuit court's ruling relating to the manner in which that evidence and the remainder of the diary is to be presented to the jury to be manifestly in error. We therefore grant the requested writ as moulded.

---

[1] Consistently with our long-standing practice, we endeavor to protect the identity of the juvenile in this sensitive matter by referring to her and her family exclusively in a generic fashion. *See, e.g.*, *Matter of Jonathan P.*, 182 W. Va. 302, 303 n.1, 387 S.E.2d 537, 538 n.1 (1989). Moreover, with respect to the first-hand anecdotal accounts of her encounters with the defendant-respondent that constitute the challenged evidence at the heart of this extraordinary proceeding, we have, where indicated in brackets, either replaced the juvenile's use of explicit language and graphic descriptions with asterisks or have rephrased or more generically characterized it. *See State v. Wood*, 194 W. Va. 525, 530 n.2, 460 S.E.2d 771, 776 n.2 (1995) (noting that although the record in that appeal "describe[d] the sexual acts in graphic detail," it was unnecessary to recount them verbatim).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The child's mother suspected unlawful sexual contact between her daughter and Bowers, their middle-aged neighbor.  On October 11, 2013, she reported her suspicions to the police.  This report led to an interview of her daughter at the local child advocacy center.  During this interview, the child related that she had engaged in two sexual encounters with Bowers, known by his CB radio handle, "Jackal."  The first alleged encounter occurred in June or July 2012 in his garage, a local gathering place stocked with numerous couches and chairs, a pool table, band gear, and radio equipment.  At that time, the child was eleven years old.  Bowers, then forty-seven, allegedly touched the child's breasts and vagina and she performed oral sex on him.  The second instance was on July 21, 2012, at a nearby pond, where Bowers allegedly penetrated the child's vagina with his finger and the two performed oral sex on each other.

In the course of their investigation, the police obtained the child's diary, a bright pink, petite, stylized volume, of about forty pages in which she had drawn illustrations and recorded her thoughts intermittently from approximately June 20, 2012, through May 20, 2013.  A general review of the diary conveys the impression that the child harbored an immature emotional and physical attraction to Bowers, which he helped to cultivate.  The diary describes the child's recurrent efforts to spend time in the presence of Bowers, against the wishes and commands of her mother and her mother's

2

live-in boyfriend.  Pages 24 and 25 of the diary, containing an entry dated September 22, 2012, illustrate the child's emotional state, which Bowers allegedly recognized and encouraged:

> When we got back Jackal was still up . . . .  Then I went inside and took the dog out.  After Jackal got done peeing, he walked up to me and I thought "Oh my god, he is getting sooooo close to me" and he said "Oh my god I'm so proud of DJ!", so I said "OK, I guess so, I don't know who you are talking about!", so Jackal said "[local racer] DJ Myers almost won against the greatest NASCAR driver in the world!", and so he walked to the doorway of the Garage and said "I LOVE YOU [the child's nickname] AND I WILL TALK TO YOU TOMORROW!", therefore I thought "HOLY **** [*expletive deleted* [2]] HE STILL HAS FEELINGS FOR ME!!!"  Wow!

The child continued the excluded entry on page 25, recalling her alleged sexual encounters with Bowers months earlier:

> Seriously wow, I still remember the night that we "did it," not as in him [*engaging in sexual intercourse* [3]].  Jackal even said that himself.  So it was [*non-intercourse sexual relations* [4]] or just that most of the time.  [*Here the child graphically describes the sexual acts.* [5]]  But I love him too and that's all there is to it.  Good night for now but not to sleep.

---

[2] *See supra* footnote 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

3

Presented with the child's account and the entries contained in her diary, the grand jury returned an indictment against Bowers on February 20, 2014, charging him with four counts of first-degree sexual assault and two counts of first-degree sexual abuse.[6]

On October 22, 2014, the assistant prosecutor filed a motion in limine to obtain an advance ruling on the diary's admissibility. A hearing on this motion was conducted on December 8, 2014, whereupon the circuit court issued an initial ruling on January 12, 2015, which was superseded for purposes of clarification by its "Amended Order Admitting in Part Diary of Child-Victim" (the "Amended Order"), entered on February 2, 2015. Therein, the circuit court examined each diary entry for inadmissible hearsay pursuant to syllabus point 10 of our decision in *State v. Kaufman*, 227 W. Va. 537, 711 S.E.2d 607 (2011) ("When ruling upon the admission of a narrative [under the evidentiary rules pertaining to hearsay], a trial court must break down the narrative and determine the separate admissibility of each separate declaration or remark.").

---

[6] *See* W. Va. Code § 61-8B-3(a)(2) (2006) (providing that a person fourteen or older commits sexual assault in the first degree when he or she "engages in sexual intercourse or sexual intrusion with another person," not his or her spouse, "who is younger than twelve years old"); § 61-8B-7(a)(3) (2006) (with regard to the same constraints of age and marital status, describing sexual abuse in the first degree as subjecting a person to "sexual contact," the definition of which is found at section 61-8B-1(6) of the West Virginia Code).

Referring to the diary evidence, the circuit court characterized the child's emotional condition as "the story of the case," noting that the prosecution's "entire theory of the case is that [Bowers] 'groomed' the child, made her to feel as if she was in love with him, then used this influence to get her to perform sexual acts." The circuit court concluded that all of the statements within the diary were admissible under the hearsay rules, either as a hearsay exception pertaining to the child's then-existing state of mind or emotional condition,[7] or as an admission by Bowers constituting an exclusion from hearsay,[8] or as non-hearsay lending context to the narrative as a whole, not offered to prove the truth of the particular matter asserted.[9] In this extraordinary proceeding, Bowers has not asserted error with respect to the circuit court's hearsay rulings.

The circuit court did, however, exclude the 2-page entry in question pursuant to West Virginia Rule of Evidence 403, reasoning that the statements therein, though relevant to the prosecution's case and probative of the offenses of which Bowers is charged, present on balance an unacceptable risk of improperly inflaming the jury.[10] In

---

[7] *See* W. Va. R. Evid. 803(3).

[8] *See id.* 801(d)(2)(A).

[9] *See id.* 801(c)(2).

[10] *See* W. Va. R. Evid. 403 (instructing that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

its exclusion ruling, the circuit court specifically acknowledged the diary generally to be "probably the most probative piece of evidence on the Defendant's mode of operation." Nonetheless, the circuit court determined that the danger of unfair prejudice posed by admitting the entry on pages 24 and 25 substantially outweighed its worth as evidence. The circuit court declared the balance of the diary admissible, except that it excised, on relevancy grounds, a four-page portion in which the predominant theme was the child's frustration with discipline imposed by her mother's boyfriend. Furthermore, instead of the jury being provided the diary itself, the circuit court ruled that photocopies of the handwritten entries and illustrations would be substituted, together with a typewritten transcription of the text. In rendering its substitution ruling, the circuit court explained that the diary's "diminutive size, pink color[] and childlike simplicity could well mislead the jury to have improper feelings of sympathy and empathy for the child-victim that could work extremely unfair prejudice toward the Defendant in this case." On March 9, 2015, the prosecutor filed the instant, two-pronged petition, challenging the Amended Order's exclusion ruling together with its substitution ruling.

## II. STANDARD OF REVIEW

We will grant a petition seeking a writ of prohibition "'only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers.'" Syl. pt. 3, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (quoting syl. pt. 1, in part, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953)). A petition for a writ of prohibition "'may

6

not be used as a substitute for a petition for appeal or certiorari.'" *Id.* In *Hoover*, we set forth five factors to assist us in determining whether a lower tribunal has exceeded its legitimate authority such that we should exercise our discretion to grant extraordinary relief in prohibition:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, in part, *id.*

## III. ANALYSIS

We acknowledge and reaffirm at the outset our admonition that "'[i]n the absence of compelling evidence of irremediable prejudice, a writ of prohibition will not lie to bar trial based upon a judge's pretrial ruling on a matter of evidentiary admissibility.' Syllabus Point 3, *State ex rel. Shelton v. Burnside*, 212 W. Va. 514, 575 S.E.2d 124 (2002)." Syl. pt. 3, *River Riders, Inc. v. Steptoe*, 223 W. Va. 240, 672 S.E.2d 376 (2008). The standard is rigorous, premised on the familiar precept that evidentiary rulings are generally left to the trial court's sound discretion and are typically outside the

7

scope of an extraordinary proceeding. *See id.*, 223 W. Va. at 248, 672 S.E.2d at 384 ("'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.'" (quoting syl. pt. 4, *Shelton*, 212 W. Va. 514, 575 S.E.2d 124)). The requisite prejudice, as contemplated by the third *Hoover* factor, must therefore be attributable to a clear error of law beyond an abuse of discretion, encompassing the rarest of misapprehensions in the admission or exclusion of evidence that can only be characterized as outliers. *See id.*, 223 W. Va. at 249, 672 S.E.2d at 385 (noting that we have, "on limited occasions, considered challenges from evidentiary rulings in unique circumstances where the matter at issue rose to a level of considerable importance and compelling urgency").

The requirement that the prejudice be "irremediable" recalls the first and second *Hoover* factors, which implicate the availability and adequacy of alternative means to obtain relief. On those infrequent occasions when we have intervened in an ongoing proceeding, each such case has satisfied the dual *Hoover* criteria that the petitioner is on the verge of being irrevocably damaged by an interlocutory ruling and that such damage will survive an eventual appeal or anything else short of an extraordinary remedy. *See River Riders*, 223 W. Va. at 249 n.13, 672 S.E.2d at 385 n.13 (collecting cases and observing that extraordinary relief has been granted in instances where trial court has refused to authorize funds for criminal defense expert, has disqualified prosecutor or private lawyer, has refused to recognize collateral estoppel bar to relitigation, or has imposed unlawful prior restraint against newspaper). In *River*

8

*Riders* itself, we issued a writ prohibiting the circuit court from applying federal maritime law to a tort action stemming from a whitewater rafting accident, inasmuch as the rulings at issue "serve[d] to have a significant and lasting negative impact on the question of liability for an important segment of business within this State." *Id.* at 249, 672 S.E.2d at 385.

The danger of irremediable prejudice from excluded evidence can be palpable in a criminal proceeding, because an acquittal will prevent the defendant from being prosecuted a second time for the same offense, in accordance with federal and state constitutional proscriptions against double jeopardy. *See State v. Adkins*, 170 W. Va. 46, 52, 289 S.E.2d 720, 725 (1982) (concluding that criminal retrial is barred "after a judgment of acquittal is entered upon a determination of the merits"); W. Va. Code § 61-11-13 (1923) ("A person acquitted by the jury upon the facts and merits on a former trial may plead such acquittal in bar of a second prosecution for the same offense, notwithstanding any defect in the form or substance of the indictment or accusation on which he was acquitted."). When a jury determines that the prosecution has failed to meet the requisite proof of guilt beyond a reasonable doubt, it has essentially found a defect in the substance of the accusation. It matters not, for double jeopardy purposes, that the defect may have been caused by the trial court's errant exclusion of highly probative evidence. *See State ex rel. Kincaid v. Spillers*, 165 W. Va. 380, 385, 268 S.E.2d 137, 141 (1980) (emphasizing that "after a judgment acquitting a defendant, no

9

retrial on the same offense is permissible no matter how erroneous the acquittal might have been." (citation omitted)).

Thus, in an ongoing criminal proceeding, the interests of justice behoove us to consider, and if appropriate, correct through extraordinary means a trial court's error of law that improperly imperils the prosecution's lone opportunity for a conviction. That is, "where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction." Syl. pt. 2, in part, *State ex rel. Sims v. Perry*, 204 W. Va. 625, 515 S.E.2d 582 (1999). The exclusion ruling here is emblematic of just the sort of prejudicial error contemplated in *Sims*. Here, the importance of the excluded entry helps to reveal the child's emotional condition—"the story of the case"—as the circuit court put it. The importance of this entry to the State is unquestioned insofar as it represents an integral part of the diary, which the court readily acknowledged as being "probably the most probative piece of evidence" in the prosecution's efforts to portray Bowers as a sexual predator.

The circuit court's candid characterizations fall short, we believe, of fully appreciating the entry's probative value. Trials involving sexual offenses often turn on the jury's assessment of the relative credibility of the child and the accused, particularly where physical evidence is lacking. *See State v. Edward Charles L.*, 183 W. Va. 641,

10

661, 398 S.E.2d 123, 143 (1990) (noting that sex-offense prosecutions involving children frequently devolve into "credibility contest[s]" after the defendant denies the child's allegations). It is to be anticipated that the child will testify in this criminal prosecution regarding the two instances of sexual contact alleged between her and Bowers. Her diary entries provide the jury an important means by which it may assess the child's credibility.[11]

Apart from its evidentiary importance as affirmative proof of the offenses charged, the excluded entry also possesses residual value insofar as it may prevent the jury from being misled by the diary's account of a conversation between Bowers and the child on September 27, 2012:

> [Jackal] said "Just hang in there, girl, and don't mention me to your dad, until you get old enough to . . . you know. But when you are old enough, we'll go out together. And I felt like just hauling off and running full speed to him and hugging and kissing him to no end! Well. Now I can look forward to being eighteen! Well, seeing as I'm only 11, I still

---

[11] The child's testimony cannot be predicted with certainty. On page 13 of her diary, written on July 22, 2012, the day following the alleged pond encounter, the child resolves to "devote my life to . . . GET JACKAL OUT OF PRISON," in anxious reaction to her mother having called the police upon discovering that her daughter was missing around midnight the evening before. Nonetheless, at her interview with the child advocate on October 18, 2013, the child related that Bowers had compelled her to engage in sexual contact and remain quiet about it under threat of death or bodily harm to her and her family. We believe that all of the relevant diary entries will be of great importance to the jury as it assesses the testimony of the child at the trial of this matter.

have 7 more years to go. Oh boy, I can't wait to ****
[*expletive deleted* [12]] him, I want to sooooo badly!

The latter portion of this entry on pages 31–32 of the diary is written in the future tense, and it is arguably plausible to interpret the child's choice of verb (redacted above) in the final sentence as a generic reference to sexual activity. Taken out of context, the entry might lead the jury to reject the indictment's allegations of sexual contact between Bowers and the child occurring days and months prior. Indeed, without elucidation, the jury could conclude that Bowers intended nothing more nefarious toward the child than to eventually "go out together." When the above passage is viewed in light of the excluded entry's explicit account of the alleged previous encounters, however, the indictment's charges of sexual assault by intrusion, as opposed to intercourse, may provide the jury useful perspective on the allegations against Bowers.

Although we are satisfied that the probative value of the excluded entry is significant, the Rule 403 balancing test yet requires us, for comparison purposes, to analyze the potential that its consideration by the jury will unfairly prejudice the defense. The circuit court's discussion in this regard was rather sparse, obliquely referring to the entry's descriptions as "graphic" and "offensive," and more specifically noting its "explicit references to sexual acts" that would "undoubtedly inflame and incite the prejudices of the jury."

---

[12] *See supra* footnote 1.

We agree that the excluded entry is expressed in graphic and explicit terms, but it is error to summarily reject its suitability as evidence based solely on the sensitive subject matter and the child's choice of language. The conduct alleged to have constituted the charged offenses is appalling by any measure, and while the child's crude description may lend an air of realism to the account, it does not do so unfairly. *See State v. Potter*, 197 W. Va. 734, 751, 478 S.E.2d 742, 759 (1996) ("All evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided."). The jury cannot help but appreciate the gravity of the dire accusations against Bowers, regardless of the heed it pays the entry at issue. Moreover, the child's diary in this case—if the accounts therein are believed by the jury—directly establishes Bowers' commission of one or more of the crimes charged, and no part of the diary is more probative in that regard than the excluded entry. Viewed from that perspective, the circuit court's error of law is manifest and the prosecutor's entitlement to prohibition is apparent. The potential of unfair prejudice to the defense through the admission of the entry excluded by the circuit court falls far short of outweighing its probative value.

We harbor no similar concerns, however, with respect to the circuit court's substitution ruling. Regardless of whether the jury views the diary itself or exact copies of its pages accompanied by a transcript, the substance of the message thus conveyed will be identical. The determination to withhold the physical volume based on the circuit

13

court's perception that the jury would be illegitimately influenced by its childlike attributes was squarely within its discretion as an evidentiary gatekeeper. We therefore deny that aspect of the prosecutor's petition for extraordinary relief.

## IV. CONCLUSION

In accordance with the foregoing, we grant the petition for extraordinary relief filed by the Prosecuting Attorney of Berkeley County insofar as the circuit court is prohibited from enforcing that aspect of the Amended Order excluding from evidence pages 24 and 25 of the child's diary. We deny the petition, however, insofar as it seeks to prohibit the circuit court from enforcing that aspect of the Amended Order withholding from the jury's consideration the physical volume itself.

Writ granted as moulded.